IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALSTOM TRANSPORTATION INC., <br><br> *Plaintiff*, <br><br> -against- <br><br> FEDERAL RAILROAD ADMINISTRATION; AMIT BOSE, solely in his Official Capacity as Administrator of the Federal Railroad Administration; UNITED STATES DEPARTMENT OF TRANSPORTATION; PETE BUTTIGIEG, solely in his Official Capacity as Secretary of Transportation, <br><br> *Defendants*. | Civil Action No. 1:24-cv-2098 |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Alstom Transportation Inc. writes to inform the Court of the Supreme Court's decision today in *Diamond Alternative Energy LLC v. EPA*, No. 24-7, *see* Exhibit A, which raised the question "whether a party may establish the redressability component of Article III standing by relying on the coercive and predictable effects of regulation on third parties."

As the Court is aware, Alstom challenges the FRA's decision to waive application of Buy America mandates to permit Intervenor Brightline to contract with Intervenor Siemens for the purchase of trainsets manufactured in Germany, when Alstom stood ready to manufacture the trainsets domestically. Summary-judgment motions were submitted last year and argued on December 13, 2024. Defendants and intervenors asserted that Alstom lacks standing because, even with a vacatur of the waiver, Brightline might not select Alstom. The Supreme Court's decision in *Diamond*, issued earlier today, further confirms that Alstom has standing.

In *Diamond*, fuel producers challenged the EPA's decision to approve of California regulations requiring automakers "to limit average greenhouse-gas emissions across their fleets of

new motor vehicles" and "to manufacture a certain percentage of electric vehicles as part of their vehicle fleets." Ex. A at 1, 3–4. California argued the fuel producers lacked standing because they "had not established any probability that automobile manufacturers would change course if EPA's decision were vacated," and thus had not shown redressability. *Id.* at 6 (cleaned up).

The Supreme Court rejected this narrow view of standing, explaining that "commonsense economic principles support the fuel producers' standing" because California's standards force automakers to produce vehicles that "use[] significantly less gasoline," harming the plaintiffs by reducing the demand for their products. *Id.* at 14. Vacating EPA's waiver, and thereby invalidating California's regulations, would "likely (not certainly, but likely) . . . make a difference for fuel producers because automakers would likely manufacture more vehicles that run on gasoline[.]" *Id.* at 15. The Court held that this satisfies redressability, emphasizing that redressability "should not be misused" to "prevent the targets of government regulations from challenging regulations that threaten their business," especially where the "claimed lack of redressability" is "rooted in questionable economic speculation." *Id.* at 17, 21. As the Court noted, "[w]hen third party behavior is predictable, commonsense inferences may be drawn." *Id*. at 14.

In this case, Alstom provided multiple reasons to conclude that it has Article III standing under established Circuit law, *see* Dkt. 50 at 3–13, including competitor standing. *Diamond* did not disturb the competitor-standing doctrine in the slightest, but rather supports its application here, *see* Ex. A at 14–15, 19–22. *Diamond* also supports Alstom's argument that, competitor standing aside, Alstom suffered economic injury consisting of lost income (*accord id.* at 11) that is sufficiently redressable by the elimination of FRA's waiver, because that vacatur would make Alstom a much more attractive choice for the disputed contract. *See* Dkt. 50 at 12–13 ("[W]hile the final decision on awarding the contract is Brightline's, the financial realities are such that the

vacatur of the unlawful award to Siemens would affect Brightline's assessments."). As the decision in *Diamond* illustrates, it need "not be certain" how Brightline would react to Siemens's disqualification for federal funding, and it is "at least 'predictable' that invalidating" FRA's waiver for Siemens would "likely result" in Alstom's selection. Ex. A at 22. This is not "the unusual scenario" where invalidating a government regulation "on businesses in a competitive market is not likely to have any effect." *Id*.

Dated: June 20, 2025

Respectfully submitted,

*/s/ Vincent Levy*
Vincent Levy (NY0487)
Jack Millman (NY0588)
Jessica Marder-Spiro (NY0589)
Daniel Fahrenthold (NY0603)
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Ave
New York, New York
T: 646-837-5120
E: vlevy@hsgllp.com

*Attorneys for Plaintiff*

3